UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN DIVISION

| | |
|---|---|
| ZURU INC.,<br><br>      Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>      Defendants. | CASE NO.: 1:23-cv-01852-ER |

## [proposed] ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION AS TO CERTAIN DEFENDANTS

**THIS CAUSE** is before the Court on Plaintiff's Renewed *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets [ECF 12], filed under 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a), by Plaintiff, ZURU, Inc. ("Zuru" or "Plaintiff").

On March 9, 2023, the Court entered a temporary restraining order and an order restraining the financial accounts used by Defendants (the "TRO"). The TRO set a hearing on Plaintiff's Motion for Preliminary Injunction for March 15, 2023. The Court continued the hearing twice to allow time for all Defendants to be served and to file a response to the Motion. The show cause hearing was held on April 5, 2023.

Prior to the hearing on the Motion for Preliminary Injunction, Plaintiff filed Proofs of Service (ECFs 43 and 44) on all but 6 Defendants[1], pursuant to the Court's Order Authorizing Alternate Service of Process. (ECF 14). Plaintiff's proofs of service affirmed that Plaintiff served process on the Defendants identified on Schedule "A" by emailing these Defendants the text of the summons issued in this action and the link http://www.sriplaw.com/notice where the full text of the Complaint, exhibits thereto, Temporary Restraining Order, and the full text of all other documents filed in this action are available to view and download in compliance with this Court's Order on Alternate Service, with the exception of Defendants numbered 58, 59, 60, 67, 75, and 81.

At the Preliminary Injunction Hearing, the Court inquired whether service had been made on all Defendants, and Plaintiff confirmed that service was made on all Defendants identified on Schedule "A," except for Defendants numbered 58, 59, 60, 67, 75, and 81 (the "Unserved Defendants"). Plaintiff requested that the TRO be extended as to those Defendants on which service had not yet been made. The Court found that good cause was shown for the extension of the TRO on Unserved Defendants and granted Plaintiff's *ore tenus* motion, extending the TRO as to Unserved Defendants.

The Court heard argument from Plaintiff and reviewed the evidence presented to the Court on the Motion. Having considered the evidence and the arguments, the Court grants Plaintiff's Motion for Entry of a Preliminary Injunction against Defendants identified in Schedule A as 1-20, 22, 24-27, 29-36, 38-45, 48-57, 61-66, 68-80, 83-93, 95-104, 106-124, 126-135, 137-144 (the "Remaining Defendants").

---

[1] Amazon left contact information for Defendants numbered 58, 59, 60, 67, 75, and 81 out of their production to Plaintiff. Plaintiff has followed up with Amazon who indicated that they are looking into the missing data.

The Court hereby determines that it has personal jurisdiction over the Remaining Defendants since the evidence presented on the motion shows that the Remaining Defendants have been served with process pursuant to this Court's order authorizing alternative service. The Court also determines that these Defendants directly target their business activities toward consumers in the United States, including New York, and specifically that the Defendants are reaching out to do business with New York residents by operating one or more commercial, interactive internet stores on internet marketplaces where New York residents can purchase counterfeit products bearing infringing trademarks belonging to the Plaintiff.

The Court also heard Defendant numbered 82, who testified at the hearing that Defendant had made no sales and had a low volume of inventory. Having considered the evidence and the arguments, the Court issues the preliminary injunction against Remaining Defendants with the exception of Defendant numbered 82.

This Court further determines that the temporary restraints previously granted in the TRO should remain in place through the pendency of this litigation and that issuing this Preliminary Injunction is warranted under Federal Rule of Civil Procedure 65. Evidence submitted in support of this Motion and in support of Plaintiff's previously granted Motion for a Temporary Restraining Order establishes that Plaintiff has a likelihood of success on the merits, that Plaintiff will suffer irreparable harm absent a preliminary injunction, and a balancing of the equities favors granting the injunction.

The Court concludes that Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing counterfeits, reproductions, or colorable imitations of the products using Plaintiff's several federally registered trademarks: BUNCH O BALLOONS,

BUNCHO and FILL AND TIE UP TO 100 WATER BALLOONS IN 60 SECONDS! (collectively the "BoB Marks").

The potential harm to Remaining Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products, if the injunction is not issued. The public interest favors issuance of the injunction to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

Further, under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of Plaintiff's trademarks. See *Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 WL 4901407, *2 (S.D.N.Y. Oct. 11, 2012); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Remaining Defendants have violated federal trademark laws, Plaintiff has good reason to believe Remaining Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless the restraint of those assets ordered in the TRO is continued.

Accordingly, the court, having considered the motion, and having found good cause, it is **ORDERED** that the motion is **GRANTED** and a preliminary injunction against Defendants identified in Schedule "A" as 1-20, 22, 24-27, 29-36, 38-45, 48-57, 61-66, 68-80, 83-93, 95-104, 106-124, 126-135, 137-144 is entered as follows:

**PRELIMINARY INJUNCTION**

1. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the BoB Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the BoB Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the BoB Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

2. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the BoB Marks, or any confusingly similar trademarks, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs. This Order is limited to the Defendants' listings using the BoB Marks, or any confusingly similar trademarks, on or in connection with all

Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs, and does not apply to the Defendants' entire e-commerce stores.

3. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the BoB Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the Seller IDs.

4. Each Defendant shall not transfer ownership of the Seller IDs during the pendency of this action, or until further order of the Court.

5. Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs that may have been deleted before the entry of this Order.

6. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Amazon.com, Inc., PayPal Holdings, Inc. ("PayPal"), Payoneer, Inc. ("Payoneer"), Stripe, Inc. and/or Stripe Payments Company ("Stripe"), Walmart.com, Etsy.com, and their related companies and affiliates shall, and, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with the Internet

based e-commerce stores operating under the Seller IDs, store numbers, infringing product numbers, and/or the e-mail addresses identified on Schedule "A" to the Complaint, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

7. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, Amazon.com, Inc., PayPal, Payoneer, Stripe, Walmart.com, Etsy.com, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details: (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to; (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained; (iii) the historical sales for the Defendants' listings that are alleged to infringe Plaintiff's trademarks; and (iv) the true identities along with complete contact information including email addresses of all Defendants.

8. No funds restrained by this Order shall be transferred or surrendered by any Defendant, financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon.com, Inc., PayPal, Payoneer, Stripe, Walmart.com, Etsy.com, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the

express authorization of this Court.

9. No Defendant whose funds are restrained by this Order may transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon.com, Inc., PayPal, Payoneer, Stripe, Walmart.com, Etsy.com, and their related companies and affiliates restrained by this Order to any other financial institution, payment processor, bank, escrow service, money transmitter or marketplace website without the express authorization of this Court.

10. Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

11. This Order shall apply to the Seller IDs, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting the BoB Marks and/or unfairly competing with Plaintiff.

12. This Order shall remain in effect until such further dates as set by the Court or stipulated by the parties.

**BOND POSTED**

13. The Court determines that the bond in the amount of Five Thousand Dollars and Zero Cents ($5,000.00) posted by Plaintiff as evidenced by the Notice of Filing Bond filed on March 15, 2023 (ECF 24) is sufficient and shall remain with the Court until a final disposition or until this Preliminary injunction is dissolved or terminated.

**DONE AND ORDERED** in New York, New York, this 10th day of April, 2023.

_____
UNITED STATES DISTRICT JUDGE
EDGARDO RAMOS